UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fagen, Inc., and<br>Midwest Ethanol Transport, LLC, | Civil No. 12-CV-2703 (MJD/SER) |
|     Plaintiffs/Third-Party Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Exergy Development Group of Idaho, LLC,<br>and James Carkulis, | |
|     Defendants/Counterclaimants, | |
| v. | |
| Hawley Troxell Ennis & Hawley LLP, | |
|     Third-Party Defendant. | |

Keith S. Moheban and Timothy M. Kelley, Esqs., Leonard Street and Deinard, PA, 150 South Fifth Street, Suite 2300, Minneapolis, Minneapolis 55402, for Plaintiffs.

Angelo L. Rosa, 1168 East 1700 South, Salt Lake City, Utah 84105, for Defendants.

Michael F. Cockson, Esq., Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendants.

Bryon G. Ascheman, Esq., Burke & Thomas, PLLP, 3900 Northwoods Drive, Suite 200, Saint Paul, Minnesota 55112, for Third-Party Defendant.

STEVEN E. RAU, United States Magistrate Judge.

This action arises out of Defendant Exergy Development Group of Idaho, LLC ("Exergy") and James Carkulis's ("Carkulis") involvement in the building and development of a wind farm project (the "Project") near Blue Earth, Minnesota. Plaintiff Fagen, Inc. ("Fagen") served as a builder of the Project and later as a financing agent. Ultimately, Exergy failed to

obtain permanent financing for the Project and the transactions leading to that failure resulted in Fagen's stipulated ownership of the Project (the "Stipulation") [Doc. 15 ¶ 1]. Notwithstanding the Stipulation, though, the parties involved in this saga, including Exergy's lawyers and Third-Party Defendant Hawley Troxell Ennis & Hawley, LLP ("Hawley"), have never once agreed to a definitive characterization of any of the transactions. That ability to disagree is further evidenced in the waffling language about the lawfulness of Fagen's ownership of the Project contained in the Stipulation.

In the transaction central to this litigation, according to Fagen, Exergy conveyed absolute ownership in 99 of the 100 outstanding membership units in Exergy Minnesota as a part of a financing transaction. (Am. Compl.) [Doc. No. 22 ¶ 18]. For its part, Exergy filed an Answer and Counterclaim arguing that the transaction documents, viewed in their entirety, constituted a grant of a security interest in the 99 units and is subject to the Minnesota Uniform Commercial Code ("Minnesota UCC") in contrast to a transfer of ownership. (Answer & Countercl.) [Doc. No. 23]. Fagen then filed an Answer and Third-Party Complaint against Hawley asserting that Exergy's counterclaim, drafted by Hawley, is inconsistent with an opinion letter drafted by Hawley and relied upon by Fagen. (Answer & Third-Party Compl.) [Doc. No. 24]. Accordingly, Fagen argues that if it is liable, then so is Hawley. (*Id.* at 7–17).

Hawley moved to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Third-Party Def. Hawley Troxell Ennis & Hawley LLP's Notice of Mot. in Supp. of Mot. to Dismiss) [Doc. No. 34]. The Motion was referred to the undersigned for hearing and a report and recommendation. (Order of Referral Dated Mar. 18, 2013) [Doc. No. 41]. For the reasons outlined below, the Court recommends denying the Motion.

I. **BACKGROUND**

   A. **Relevant Facts**

   1. **The Project**

The Project is a thirty-six megawatt wind farm project near Blue Earth, Minnesota. (Am. Compl. ¶ 5). A series of parent-subsidiary companies own the Project. (*Id.* ¶ 6). Specifically, Exergy Minnesota Holdings, LLC ("Exergy Minnesota")[1] is the sole member of Minnesota Wind Partners I, LLC, ("Minnesota Wind"), which in turn is the sole member of Big Blue Wind Farm, LLC ("Big Blue"). (*Id.* ¶¶ 6–8). Big Blue owns the Project. (*Id.* ¶ 9).

   2. **Fagen Finances Exergy**

Initially, Exergy owned Exergy Minnesota and retained Fagen as the general contractor for the Project. (*Id.* ¶ 14); (Decl. of Jennifer Johnson, "Johnson Decl.") [Doc. No. 10 ¶¶ 7, 8]. Unable to secure permanent financing to pay the costs of acquiring, constructing, and operating the Project, Exergy requested Fagen provide interim financing. (Answer & Third-Party Compl. at 10). Fagen agreed and advanced money to or on behalf of Exergy pursuant to a series of term loans made in 2011 and 2012. (*Id.*).

In early 2012, Exergy requested additional financing from Fagen, and Fagen posted a letter of credit on Exergy's behalf subject to a number of terms and conditions. (*Id.* ¶¶ 14, 15). These terms and conditions were negotiated in a Sixth Amended and Restated Master Loan Agreement (the "Sixth Amended Loan Agreement"), a Seventh Amended and Restated Master Loan Agreement (the "Seventh Amended Loan Agreement"), a Limited Liability Company Purchase Agreement (the "Purchase Agreement"), and the First Amended and Restated Member Control Agreement (the "Member Control Agreement"). (*Id.* ¶ 15); (Purchase Agreement, Ex.

---

[1]  This company has since been renamed Blue Earth Minnesota Holdings, LLC. (Am. Compl. ¶ 6).

B, Attached to Johnson Decl.) [Doc. No. 10-2]; (Member Control Agreement, Ex. C, Attached to Johnson Decl.) [Doc. No. 10-3]; (Sixth Amended Loan Agreement, Ex. A, Attached to Decl. of Bryon F. Ascheman in Supp. of Third-Party Def. Hawley Troxell Ennis & Hawley LLP's Mot. to Dismiss, "Aschemann Decl.") [Doc. No. 37]. These agreements (collectively, the "Big Blue Transaction") were made in late March 2012 and dated and effective February 29, 2012. (Answer & Third-Party Compl. at 11). Hawley represented Exergy in the preparation of all these documents. (*Id.*).

### a. Sixth and Seventh Amended Loan Agreements

Pursuant to the Sixth and Seventh Amended Loan Agreements, Fagen loaned additional sums to Exergy. (*Id.*). The parties agreed that "[a]s an additional inducement for [Fagen] to enter into the transactions contemplated by this Agreement, [Exergy] has agreed to sell [Fagen] ninety-nine percent (99%) of the membership interests (the "Conveyed Interests") in Exergy Minnesota . . . (the "Big Blue Transaction"), pursuant to [the Purchase Agreement] . . . ." (Sixth Am. Loan Agreement at 32).

### b. Purchase Agreement

Under the Purchase Agreement, Exergy "convey[ed] to Fagen ninety-nine (99) units of the 100 outstanding units of membership interest in Exergy Minnesota . . . , which units constitute 99% of the membership interest in Exergy Minnesota . . . ." (Purchase Agreement ¶ 2); *see* (Am. Compl. ¶ 20). The net effect of the Purchase Agreement was to reduce the outstanding obligations under the Sixth Amended Loan Agreement by $11,447,503.02. (Purchase Agreement ¶ 3); *see* (Am. Compl. ¶ 21); (Answer & Am. Countercl. at 3). Also pursuant to the Purchase Agreement, Fagen agreed to extend Exergy additional credit under the Sixth Amended Loan Agreement. (Am. Compl. ¶ 20).

4

### c. Member Control Agreement and Assignment

On February 29, 2012, Fagen and Exergy entered into a Member Control Agreement, which appointed Exergy as the managing member of Exergy Minnesota. (Am. Compl. ¶¶ 24–25); (Member Control Agreement at 5). The parties appointed Carkulis the President and Chief Financial Officer of Exergy Minnesota. (Am. Compl. ¶ 26); (Member Control Agreement at 8).

Section 2.8 of the Member Control Agreement provides:

> **Purchase Option.** As soon as Exergy has Repayment Capital (defined below), but no later than June 29, 2012, Exergy shall have the obligation and option to purchase the Units owned by Fagen for a purchase price equal to $11,447,503.02, together with interest accrued thereon from and after February 29, 2012 at an interest rate equal to 10% per year (the "Option Purchase Price"). . . . If Exergy fails to exercise the purchase in the manner described herein, on or before June 29, 2012, the purchase option shall automatically expire and be of no force or effect. If the Units owned by Fagen are not repurchased by June 29, 2012, the Units owned by Exergy shall automatically transfer to Fagen, such that Fagen is the owner of one hundred percent (100%) of the Units, and Exergy shall no longer be a Member and shall have no rights as a Member as of such date.

(Am. Compl. ¶ 27); (Member Control Agreement at 4–5).

Exergy simultaneously executed and delivered to Fagen an Assignment Separate from Certificate (the "Assignment"), which provides in relevant part:

> **FOR VALUE RECEIVED** and effective upon Exergy's failure to repurchase the Retained Interest on or before June 29, 2012 in accordance with the terms of the Company's Operating Agreement, Exergy hereby assigns and transfers unto Fagen, or its successor, one (1) unit of membership interest in the Company [Exergy Minnesota] standing in Exergy's name on the books of the Company and represented by membership unit Certificate No. 3 of the Company, and hereby authorizes and directs the authorized officer of the Company to transfer such shares on the books of the Company, and to issue a new certificate representing such unit.

(Am. Compl. ¶ 28–29).[2]

---

[2] Although not relevant for the purposes of this Motion, the text quoted by Fagen in its Amended Complaint does not match the exhibit provided by Fagen's Chief Financial Officer. *See* (Assignment Dated Feb. 29, 2012, Ex. D, Attached to Johnson Decl.) [Doc. No. 10-4].

### d. Hawley Opinion Letter

Less than a month later, Hawley sent Fagen an opinion letter regarding the Big Blue Transaction. (Letter from Hawley Troxell Ennis & Hawley LLP to Fagen, Inc. (Mar. 23, 2012), Ex. A, Attached to Answer & Third-Party Compl., the "Opinion Letter") [Doc. No. 24]. One of the opinions provided by Hawley was that:

> All of the membership interest in Big Blue is owned one hundred percent (100%) by M[innesota] Wind, which is owned one hundred percent (100%) by Exergy M[innesota] Holdings, which is owned one percent (1%) by Borrower.

(*Id.* at 4).[3] Exergy is identified as the Borrower. (*Id.* at 1).

Fagen claims that the Opinion Letter, particularly in the excerpt above, states that Fagen owned 99% of the Project. (Answer & Third-Party Compl. at 13). Exergy, however, contends that Fagen merely held a security interest in those membership units. (Answer & Countercl. at 4). Further, Exergy asserts that Fagen failed to comply with the foreclosure procedures of Article 9 of the Minnesota UCC when it declared its absolute and outright title to the Exergy Minnesota units and its sole ownership of Exergy Minnesota. (Answer & Am. Countercl. at 16–17). According to Fagen, Exergy's allegations are irreconcilable with the Opinion Letter. (Answer & Third-Party Compl. at 15).

### e. Eighth Amended and Restated Master Loan Agreement and Additional Advances

Fagen extended additional credit to Exergy on April 2, 2012. (Am. Compl. ¶ 46). This agreement is documented in the Eight Amended and Restated Master Loan Agreement ("Eighth Amended Loan Agreement"). (*Id.*). The maturity date for these loans was June 29, 2012. (*Id.* ¶ 66). Fagen also made additional advances to Exergy in late June and early July 2012 (the

---

[3] These page numbers refer to the page number in the letter itself, not the page numbers added by CM/ECF.

"Additional Advances"). (*Id.* ¶¶ 78–81). There was no agreement about specific deadlines for Exergy to repay the Additional Advances. (Am. Compl. ¶ 79).

### 3. Exergy Fails to Exercise Purchase Option and Fagen Declares Ownership

Exergy failed to repay the loans under the Eighth Amended Loan Agreement and the Additional Advances, and failed to exercise the Purchase Option of the Member Control Agreement for the 99 Exergy Minnesota member units on or before June 29, 2012. (Am. Compl. ¶ 30); (Answer & Am. Countercl. at 15).

Fagen, claiming Exergy's failure to exercise the Purchase Option of the Member Control Agreement effectuated an absolute transfer of Exergy's remaining membership unit in Exergy Minnesota, declared that Exergy's rights as a member had terminated and ceased. (Answer & Am. Countercl. at 16). On August 29, 2012, Fagen adopted a written resolution removing Exergy as the Managing Member of Exergy Minnesota. (Resolutions of the Sole Member & Governor of Exergy Minnesota, Ex. E, Attached to Johnson Decl.) [Doc. No. 10-5]. Fagen notified Carkulis in writing of this action and of Carkulis's removal as an officer of Exergy Minnesota (the "Notice"). (Letter from Roland J. Fagen to Carkulis (Aug. 29, 2012), Ex. F at 1, Attached to Johnson Decl.) [Doc. No. 10-6]. The Notice appointed Ron Fagen and other Fagen affiliates as officers of Exergy Minnesota. (*Id.*). The Notice also requested that Exergy and Carkulis "(1) cease taking any action on Exergy Minnesota's behalf, (2) cease holding themselves out as the managing member or officers of Exergy Minnesota, and (3) deliver to Fagen's counsel" Exergy Minnesota documents. (Am. Compl. ¶ 37); *see also* (*id.*).

On October 5, 2012, Exergy submitted a "Big Blue Wind Farm Progress Report" to Northern States Power Company ("NSP"), the utility company that agreed to purchase energy from the Project. (Big Blue Wind Farm Progress Report, Ex. K, Attached to Johnson Decl.)

7

[Doc. No. 10-11].[4]  Fagen did not authorize this submission and contacted NSP independent of it.  (Am. Compl. ¶ 41).  In response to Exergy's submission and other contacts, NSP wrote a letter acknowledging receipt of communications from Fagen, Carkulis, and Exergy.  (Letter from NSP to Carkulis, Exergy management, and Fagen's CFO (Oct. 12, 2012), Ex. L, Attached to Johnson Decl.) [Doc. No. 10-12].  Among those communications was a letter in which Fagen states it had obtained "substantially all of the ownership interests in [Big Blue]."  (*Id.* at 2).[5]

Expressing concern about the ownership confusion, NSP's letter stated, in relevant part:

> NSP has questioned []Carkulis about these communications from Fagen and was told Fagen has sent some letters to Exergy but that the underlying transaction remains in place and that Exergy anticipates its issues with Fagen will be worked out soon.  Despite those assurances by Exergy, NSP continues to be told by Fagen that Exergy is no longer involved in development of the [P]roject.  And most recently, NSP has received competing monthly project updates from both Exergy and Fagen.

(*Id.*).  Because of the conflicting ownership claims, NSP decided to hold all monies due under the power purchase agreement in escrow until all parties adequately assured NSP "that the dispute has been satisfactorily resolved."  (*Id.* at 3).

### 4. Litigation Ensues

Shortly after Exergy submitted its "Big Blue Wind Farm Progress Report" to NSP, Fagen initiated this litigation in state court in Faribault County on October 12, 2012.  (Compl., Ex. A, Attached to Notice of Removal) [Doc. No. 1].  The action was removed.  (Notice of Removal). Initially, Fagen characterized the lawsuit as one concerning the ownership of the Project. (Compl. ¶ 1).  Fagen originally asserted five counts:  Count I: Declaratory Judgment; Count II: Injunctive Relief; Count III: Specific Performance; Count IV: Breach of Contract (Against

---

[4]  Although the letterhead shows the letter is from Xcel, the Amended Complaint refers to NSP.  This Report & Recommendation refers to Fagen's terminology.

[5]  These page numbers refer to the page number in the letter itself, not the page numbers added by CM/ECF.

Exergy Only); and Count V: Tortious Interference with Contract (Against Carkulis and Woolstenhulme Only). (*Id.* ¶¶ 50–73). Exergy removed the matter to this Court and the parties engaged in the procedural and scheduling skirmishing that frequently accompanies requests for injunctive relief. By early November, the parties reached a stipulation regarding the ownership of the Project thereby mooting the declaratory judgment request for injunctive relief and specific performance. (Stipulation).

A little more than three weeks later, transforming the suit into one concerned solely with money damages, Fagen filed an Amended Complaint, assert the following six counts: Count I: Breach of Contract (Against Exergy Only); Count II: Defamation (Against Carkulis Only); Count III: Deceptive Trade Practices (Against Carkulis and Exergy); Count IV: Breach of Contract (the Eighth Loan Agreement) (Against Exergy Only); Count V: Breach of Contact (the Additional Advances) (Against Exergy Only); and Count VI: Unjust Enrichment and Quuntum Merit (Against Exergy Only). (Am. Compl. ¶¶ 84–112). Exergy's counterclaims assert violation of the Minnesota UCC, conversion, breach of contract, violation of the Minnesota Limited Liability Company Act, breach of fiduciary and other duties, and intentional interference with prospective economic advantage (the "Counterclaims"). (Answer & Countercl. at 16–21).

Fagen responded to the Counterclaims by answering and lodging a Third-Party Complaint against Exergy's counsel, Hawley, alleging professional negligence with respect to the Opinion Letter. (Answer & Third-Party Compl.). Hawley authored the Opinion Letter which was issued after the execution of the Purchase Agreement in which Exergy conveyed 99 of 100 membership units to Fagen. (*Id.* at 12–13). Fagen alleges that Exergy's Counterclaims, filed by Hawley, make legal claims that are contradictory to, and irreconcilable with, the Opinion

Letter.  (*Id.* at 7–8).  Fagen's Third-Party Complaint seeks, among other relief, judgment against Hawley in the event damages are awarded against Fagen on Exergy's counterclaims.  (*Id.* at 17).

### 5. Stipulation on Ownership of Exergy Minnesota

After the first volley of pleadings, Fagen and Exergy stipulated and agreed that Fagen acquired ownership of Exergy Minnesota through transactions it entered into with Exergy.  (Order Regarding Mot. for TRO (ECF Docket No. 7)) [Doc. No. 16 ¶ 1].  According to the Stipulation, Fagen transferred ownership of Exergy Minnesota to Midwest Ethanol Transport, LLC ("Midwest"), and the Defendants do not challenge the validity of that transfer of ownership.  (*Id.* ¶ 2).  Furthermore, "because Exergy Minnesota is the sole member of Minnesota Wind . . . , and Minnesota Wind is the sole member of Big Blue Wind Farms, LLC ("Big Blue") and Big Blue owns [the] Project," Midwest now owns and controls the Project.  (*Id.* ¶ 3).  Although the stipulation purported to resolve any dispute about ownership, the parties continued to dispute whether the transfer was lawful.  (*Id.* ¶ 4).

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion, courts consider all facts alleged in the complaint as true, and construe the pleadings in the light most favorable to the nonmoving party.  *See, e.g.*, *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (citations omitted).  A court must not, however, give effect to conclusory allegations of law.  *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citation omitted).  A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle the nonmoving party to relief.  *See, e.g.*, *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 826–27 (8th Cir. 2008).

When matters outside the pleadings are submitted by the parties in a motion to dismiss under Rule 12(b)(6) and are not excluded by the Court, the motion must be considered a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (citations omitted). "Matters outside the pleadings" include "statements of counsel at oral argument raising new facts not alleged in the pleadings . . . and any written or oral evidence in support of or in opposition to the pleading that provide[s] some substantiation for and does not merely reiterate what is said in the pleadings." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (internal quotations and citations omitted). "[B]ut [a court] may consider some materials that are part of the public record . . . as well as materials that are necessarily embraced by the pleadings[]" when reviewing a Rule 12(b)(6) motion. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (internal quotations and citations omitted). The Court has "complete discretion" in deciding whether to accept material beyond the pleadings that is offered in support of a Rule 12(b)(6) motion. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (citation omitted).

### III. DISCUSSION

#### A. Matters Outside the Pleadings

Hawley argues the Opinion Letter stated Exergy was the owner of 1% of Exergy Minnesota, but was silent with respect to the remaining 99% of ownership interests. (Third-Party Def. Hawley Troxell Ennis & Hawley LLP's Mem. in Suppp. of Mot. to Dismiss, "Hawley's Mem.") [Doc. No. 36 at 3]. It claims the Opinion Letter "intentionally did not offer any opinion as to ownership of the remaining 99% of Exergy Minnesota because, beginning at the inception of the transaction, the parties disputed whether this transfer was an absolute

conveyance of membership units or instead the grant of a security interest governed by the UCC." (*Id.*).

Hawley's Motion relies in part on four emails attached to the declaration of one of its attorneys. (*Id.* at 8–9); *see also* (Email from Richard Riley to Tom Jensen (Feb. 28, 2012), Ex. B, Attached to Ascheman Decl.); (Email from Richard Riley to Tom Jensen (Mar. 1, 2012), Ex. C, Attached to Ascheman Decl.); (Email from Richard Riley to Tom Jensen (Mar. 6, 2012), Ex. D, Attached to Ascheman Decl.); (Email from Tom Jensen to Richard Riley (Mar. 26, 2012), Ex. E, Attached to Ascheman Decl.). The Court must determine whether these emails are attached to or embraced by the pleadings and, if not, whether to convert the Motion to one for summary judgment under Rule 56.

Hawley claims "Fagen admit[ed] in its Answer to the Counter-Claim and Third-Party Complaint that the parties exchanged emails regarding the applicability of the UCC" and, therefore, the emails are "necessarily embraced" by the pleadings. (Hawley's Mem. at 6–7 n.1). Fagen objected to conversion of this Motion to one for summary judgment in its opposing memorandum and by declaration. (Fagen, Inc.'s Mem. in Opp'n to Hawley Troxell's Mot. to Dismiss Third-Party Compl., "Fagen's Mem.") [Doc. No. 43 at 20–21]; (Fagen, Inc.'s Rule 56(d) Decl.) [Doc. No. 45].

In support of its argument that the emails are embraced by the pleadings, Hawley refers to the following paragraph in Fagen's answer to the counterclaim:

> With respect to the allegations of paragraph 14, Fagen admits that counsel for the parties discussed whether and how Article 9 of the Uniform Commercial Code would relate to the transactions contemplated by the parties, and that irrespective of positions Hawley [] may have taken at various times during these discussions, Hawley [] ultimately concluded that the transactions were effective, were not illusory[,] and that they constituted an absolute conveyance and sale of the 99 membership units, all as reflected in Hawley['s] March 23 Opinion.

12

(Answer & Third-Party Compl. at 3 ¶ 9); *see also* (Hawley's Mem. at 6–7 n.1).

But this paragraph references neither the emails on which Hawley relies nor the exchange of emails. General reference to discussions that took place on the same topic as the emails does not sufficiently "embrace" the emails for purposes of their consideration in this Motion. *See Hovind v. Bristol Place Corp.*, No. 08-cv-597 (JRT/FLN), 2008 WL 4717476, at *5 (D. Minn. Oct. 24, 2008) (rejecting an argument based on medical records, finding they were not necessarily embraced in the pleadings because they "were not affixed to, quoted, or extensively discussed" in the amended complaint and therefore could not be discussed in a Rule 12(b)(6) motion to dismiss (citation omitted)).

Similarly, in its Third-Party Complaint, Fagen alleges that

> In the course of preparing the March 23 Opinion, and in relation to other legal work Hawley [] has performed relating to the [] Project, Hawley [] has engaged in hundreds of emails, phone calls, letters[,] and other submittals directed to Fagen and/or its attorneys and advisors located within the state of Minnesota.

(Answer & Third-Party Compl. at 9 ¶ 7). Passing reference to "hundreds of emails . . . directed to Fagen and/or its attorneys" from Hawley does not sufficiently embrace the specific emails on which Hawley relies. *See Hovind*, 2008 WL 4717476, at *5.

With respect to the instant Motion, the pleadings consist of the Third-Party Complaint and the Opinion Letter. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (defining "pleadings" as complaint, exhibits attached to complaint, matters of public record and orders). While the emails would be relevant to a summary judgment motion, the Court declines to convert Hawley's Motion because the Third-Party Complaint and Opinion Letter do not incorporate or reference the emails on which Hawley relies. Accordingly, the Court excludes the emails from consideration for purposes of this Motion.

### B. Hawley's Motion

Hawley argues three bases support its motion. First, Hawley argues that Fagen's claims are not a proper third-party action under Rule 14(a) because Fagen is not alleging that Hawley is derivatively or secondarily liable. (Hawlye's Mem. at 15–18). Rather, Fagen alleges only professional negligence, claiming Hawley is liable if Exergy succeeds in asserting rights under the Minnesota UCC. (*Id.* at 18). Second, Hawley argues Fagen's claims fail because its liability cannot exceed the scope of the Opinion Letter, which expresses no opinion about the absolute ownership of 99% of Exergy Minnesota. (*Id.* at 18–23). Finally, Hawley argues that Fagen cannot establish it reasonably relied on the Opinion Letter because contemporaneous communications establish Fagen was well aware that it disagreed with Hawley's assessment regarding the transfer of the 99 membership units as a transfer of a security interest subject to the Minnesota UCC or an absolute transfer. (*Id.* at 24–25).

Hawley's first argument is procedural—essentially, Hawley claims impleader is inappropriate. For that reason, the Court addresses that claim first and finds impleader proper pursuant to the liberal reading accorded Rule 14. The Court then evaluates Hawley's substantive claims. Because Fagen properly alleged a professional negligence claim, the Court recommends denial of Hawley's Motion at this stage.

#### 1. Rule 14(a) Impleader of Hawley is Appropriate

Rule 14(a) allows impleader of a third party "who is or may be liable to [a defending party] for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Impleader is permissible when the liability of the third party "is in some way dependent upon the outcome of the main claim." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (quoting *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987)). Courts construe Rule 14(a) liberally in favor

of impleading a third party because impleader promotes efficiency and avoids a circuity of actions and a multiplicity of suits. *United States v. J & D Enters. of Duluth*, 955 F. Supp. 1153, 1156 (D. Minn. 1997) (PAM/RLE) (citations omitted). "Often, this means that the primary defendant may assert a cause of action for indemnity or contribution against a third-party defendant, though the doctrine is not limited solely to such claims." *Wells Fargo Bank, N.A. v. MLD Mortg., Inc.*, No. 12-cv-227 (ADM/AJB), 2012 WL 6139366, at *2 (D. Minn. Dec. 11, 2012) (citing *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 120 (E.D.N.Y. 2005).

Exergy's counterclaims, authored and filed by Hawley, revolve around the meaning and enforceability of the Big Blue Transaction. (Answer & Am. Countercl. at 11–12). In the Opinion Letter, Hawley asserted it delivered the Opinion Letter to Fagen "for the sole benefit of Fagen Inc., who we (Hawley) understand and agree may rely upon the opinions expressed herein." (Opinion Letter at 8). Fagen alleges the Opinion Letter finds that Fagen was the 99% owner of the Project. (Answer & Third-Party Compl. at 8). Later, Fagen asserts that Hawley, in direct contradiction to the Opinion Letter, filed counterclaims on Exergy's behalf claiming that Fagen never owned any portion of the Project and that Fagen merely held security interests in the Project as collateral. (*Id.*).

To the extent Exergy succeeds on its counterclaims, Fagen's liability may be the foreseeable result of its reliance on Hawley's legal opinion. Fagen's Third-Party Complaint is dependent upon the outcome of Exergy's counterclaims, and it would be most expedient, efficient, and logical to hear these matters together. At the hearing on this Motion, Hawley acknowledged that it could have potential liability to either Fagen or Exergy. Hawley also acknowledged that an advising attorney may be liable for the advice he or she provides.

"The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory," including the negligence of the third party.  6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1446 (2010)).  Regardless of whether an implied warranty existed between the parties, impleader is appropriate because a third party negligence claim such as this one is a viable theory and basis for a Rule 14(a) claim.  Federal Practice and Procedure states, "One who is forced to pay another money by reason of a third person's negligence has a claim against that third person and he may be brought into the case as a third-party defendant." *Id.* (citing *Jones v. Waterman S.S. Corp.*, 155 F.2d 992 (3d Cir. 1946); *see also ICI America, Inc. v. Martin-Marietta Corp.*, 368 F. Supp. 1148, 1151 (D. Del. 1974))

In the present case, Hawley, acting as counsel for Exergy, delivered the Opinion Letter to Fagen as part of the consummation of the Big Blue Transaction.  (Answer & Third-Party Compl. 7–8).  Hawley provided Fagen with the legal opinion with the express intent that Fagen may rely on the opinion.  (*Id.*).  To the extent that Hawley expressed an opinion on the conveyance of the membership units in Exergy Minnesota, it is reasonable and foreseeable that Fagen would rely on such an opinion.  And finally, to the extent Fagen may be found liable to Exergy for breach of the Minnesota UCC or conversion, such liability may be the result of Fagen's reliance on Hawley's potentially negligent provision of the Opinion Letter.

The Court finds that impleading Hawley does not rely only on the fact that Fagen's claims against Hawley are the same basic facts, transaction, or occurrence as Exergy's claims against Fagen.  Rather, impleader is appropriate here because if Fagen is liable to Exergy, it may reasonably claim its conduct is attributable to the advice Hawley provided in the Opinion Letter.

Hawley admitted it may be liable for the advice provided in the Opinion Letter during the hearing on this Motion. Whether any relief for Exergy is granted under the Minnesota UCC or another avenue, Fagen's claims of reliance and Hawley's corresponding potential for liability remain interconnected and related to the claims asserted between Fagen and Exergy.

At this early stage of litigation, the pleadings contain sufficient information that indicate Hawley *may* be liable to Fagen for all or part of Fagen's liability to Exergy on its counterclaims. Therefore, in order to avoid a circuity of actions and serve judicial economy, Fagen's claims against Hawley should be litigated as part of this case.

### 2. Hawley's Substantive Claims

Having concluded that the potential claims for professional negligence against Hawley are appropriate procedurally to be asserted in this action, the Court now turns to the next issue: whether Fagen states a claim against Hawley upon which relief may be granted. To sufficiently allege a claim for professional negligence, "a plaintiff must establish (1) that an attorney-client relationship existed; (2) that the attorney acted negligently; and (3) that the negligence proximately caused the damage to plaintiff." *Merry v. Prestige Capital Mkts., Ltd.*, No. 12-cv-1608 (SRN/JJK), 2013 WL 1900628, at *8 (D. Minn. May 7, 2013). Fagen alleges "Hawley [] owed a duty of care to Fagen in the . . . [Opinion Letter], because Fagen was the intended third[-]party beneficiary of the Opinion [Letter].[6] (Answer & Third-Party Compl. at 16). Fagen also alleged that if it is found liable, its "liability will confirm that Hawley [] in fact was wrong in its legal opinion and negligent in the provisions of its [Opinion Letter] to Fagen." (*Id.* at 17). Hawley presents two arguments regarding Fagen's professional negligence claim: (1) that it

---

[6] Fagen notes that "a law firm has malpractice liability to a non-client that is the intended beneficiary of the legal services." (Fagen's Mem. at 12) (citing *McIntosh Cnty. Bank v. Dorsey & Whitney LLP*, 745 N.W.2d 538, 547 (Minn. 2008)).

17

never opined that Fagen owned absolutely 99% of the Project and (2) Fagen did not actually or could not reasonably rely on the Opinion Letter. (Hawley's Mem. at 18–25).

But Hawley fails to account for the ambiguity created by the Purchase Agreement, executed shortly before the Opinion Letter.[7] The Purchase Agreement (signed February 29, 2012) explicitly states that "Exergy shall convey to Fagen ninety-nine (99) units of the 100 outstanding units of membership interest in Exergy Minnesota . . . , which units constitute 99% of the membership interest in Exergy Minnesota . . . ."[8] (Purchase Agreement at 1). Hawley also fails to note paragraph 6 of the Purchase Agreement, which provides:

> 6. <u>Absolute Conveyance</u>. Exergy acknowledges and agrees that the conveyance of the Membership Interests is being made and accepted in exchange for and in consideration of the Big Blue Purchase Price and Fagen's agreement to extend additional credit to Exergy pursuant to the Loan Agreement. The conveyance of Member Interests shall be interpreted and construed as an absolute conveyance of all of Exergy's right, title[,] and interest in and to the Member Interests and is not intended (now or in the future) to constitute a mortgage, security interest, pledge, trust conveyance[,] or other security agreement of any nature whatsoever. Exergy hereby waives any claim that the conveyance of the Member Interests pursuant to this Agreement constitute a mortgage, security

---

[7] The Purchase Agreement may be considered here because it is necessarily embraced by Fagen's Third-Party Complaint. *See* (Third-Party Compl. at 11–13).

[8] Fagen also refers to a February 27, 2012, opinion letter sent by Hawley in connection to the Fifth Amended and Restated Master Loan Agreement. (Letter from Hawley Troxell Ennis & Hawley LLP to Fagen, Inc. (Feb. 27, 2012), Ex. A, Attached to Decl. of Keith S. Moheban, the "February Letter.") [Doc. No. 44]. There, Hawley opined that "[a]ll of the membership interest in Big Blue is owned one hundred percent (100%) by M[innesota] Wind, which is owned one hundred percent (100%) by Exergy M[innesota], which is owned one hundred percent (100%) by [Exergy]." (*Id.* at 4 ¶ 2). The Opinion Letter states the same, except that the final clause asserts that Exergy Minnesota Holdings "is owned one percent by [Exergy]." (Opinion Letter at 4 ¶ 2). Thus, this February 27, 2012 opinion letter evidences knowledge that Exergy owned 100% of Exergy Minnesota prior to the execution of the Purchase Agreement. Considering these documents together and drawing reasonable inferences arising from the Third-Party Complaint in favor of Fagen, the February Letter supports a finding that Fagen has stated a claim against Hawley. Because the February Letter is not attached to a pleading or necessarily embraced by a pleading, however, it is not be considered or relied on for purposes of this Rule 12(b)(6) Motion.

> interest, pledge, trust conveyance[,] or any other security agreement of any nature whatsoever.

(Purchase Agreement ¶ 6).

At best, consideration of the Purchase Agreement and the Opinion Letter together creates ambiguity about the Opinion Letter's omission of ownership of 99% of the Membership Interests. Hawley attempts to avoid this by noting that the Opinion Letter lists the documents considered and the Purchase Agreement is not among them. (Hawley Mem. at 19). Hawley also claims that silence as to the other 99% was purposeful. (*Id.* at 10–11). As Fagen notes, though, Hawley's opinion was not created in a vacuum. The parties were aware Exergy owned 100% of Exergy Minnesota and that the Purchase Agreement, which "conveyed" 99 units of ownership interest to Fagen, contained paragraph 6 above. (*Id.* at 19 n.4).

In short, both parties cite documents outside of the pleadings to demonstrate the apparent disagreement over the meaning and enforceability of the Purchase Agreement. The question before the Court is whether Fagen properly pleaded a claim for professional negligence against Hawley by sufficiently alleging the necessary elements and facts related to those elements. Construing the pleadings in favor of Fagen and considering the Opinion Letter in light of the Purchase Agreement, the Court cannot conclude that Fagen failed to plead a claim upon which relief may be granted against Hawley and therefore recommends denial of Hawley's Motion.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Third-Party Defendant Hawley Troxell Ennis & Hawley LLP's Motion to Dismiss [Doc. No. 34] be **DENIED without prejudice**.

Dated: September 10, 2013

                                        *s/Steven E. Rau*
                                        STEVEN E. RAU
                                        United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **September 24, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.